PALMER, ASSIGNEE, ETC., APPELLANT, v. McCARTHY, APPELLEE.

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS.

A deed of assignment for the benefit of creditors, to be valid, must show upon its face that it was intended to embrace all of the property of the assignor.

2. SAME.

A failure to comply with the requirement of the statute with respect to a list of the creditors and an inventory of the estate under oath, will invalidate the deed of assignment.

3. PAROL EVIDENCE INADMISSIBLE, WHEN.

Parol evidence is inadmissible to show that property, not described in the deed of assignment or in the inventory, was intended to pass under the deed.

*Appeal from the District Court of Pueblo County.*

THIS was an action of replevin brought by appellant, plaintiff below, against the appellee, sheriff of the county.

One D. C. Bowne engaged in mercantile business in the city of Pueblo, on the 3d day of August, 1889, attempted to make an assignment for the benefit of creditors under the Statute of 1885.

1 Mills Ann. Stat., chap. 9, § 169, Acts of 1885, p. 43.—
" Any person may make a general assignment of all his property for the benefit of his creditors, by deed, duly acknowledged, which, when filed for record in the office of the clerk and recorder of the county where the assignor resides, or, if a nonresident, where his principal place of business is, in this state, shall vest in the assignee the title to all the property, real and personal, of the assignor, in trust, for the use and benefit of such creditors."

Sec. 170.—" The assignor shall annex to such assignment an inventory, under oath, of his estate, real and personal, according to the best of his knowledge, with the estimated value thereof, and also a list of his creditors, giving their

names, residence if known, and the amount of their respective demands ; but such inventory shall not be conclusive of the amount of the assignor's estate, nor shall the omission of any property from such inventory defeat the assignment or conveyance of the same."

Sec. 171.—" No such deed of general assignment of property by an insolvent, or in contemplation of insolvency for the benefit of creditors, shall be valid, unless by its terms it be made for the benefit of all his creditors, in proportion to the amount of their respective claims."

And, in pursuance of such attempt, made and executed the following paper :

" Know All Men by These Presents, That I, D. C. Bowne, residing and doing business in the city and county of Pueblo, state of Colorado, for value received, do hereby grant, bargain, sell and convey to W. W. Palmer of the same place, all of the accounts, debts, dues, notes, bills, bonds and demands, goods, wares and merchandise named and specified in a schedule and inventory to be hereinafter filed, to have and to hold the same to him, the said W. W. Palmer, and to his assigns in trust only, and to collect, sue for, demand, receive and recover all such sums of money as may be due, owing, and payable thereon ; and to sell said goods, wares and merchandise as the court may direct, and as shall be for the best interest of all parties, and after paying all reasonable and proper costs, charges and expenses out of the proceeds thereof, to pay each and all of my creditors the full sum that may be due and owing by me to them, of which creditors, a list, together with a true amount of my indebtedness to them severally is shown in a schedule signed by me and marked ' Schedule A,' and if the proceeds of said goods, wares and merchandise, and chattels, shall not be sufficient fully to pay all and every of my said creditors, then to pay them pro rata in proportion to the amount due and owing to each of them, but if the proceeds thereof shall be more than sufficient to satisfy and pay all my indebtedness to my said creditors then. the said W. W. Palmer is to pay and return to me the bal··

ance, if any should be left after paying my said creditors aforesaid, and all costs incurred herein.    And I do nominate, constitute and appoint the said W. W. Palmer our true and lawful attorney, irrevocable by me, and for every purpose connected therewith, to ask, demand, sue for, collect, receive and recover all and singular such sum or sums of money as now are or may hereafter become due upon, for, or on account of, any of the property, effects, choses, or things in action, or demands above assigned, giving and granting unto my said attorney full power and authority to do and perform every act, deed or thing requisite and necessary in the premises, as fully to all intents and purposes as I might or could do, if this assignment had not been made, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute may lawfully do in the premises, by virtue thereof."

On the 12th day of August, Bowne filed a partial list of creditors with the approximate amount due each, at the bottom of which occurs the following : " Amount of stock on hand about $35,000."

" State of Colorado, County of Pueblo, ss.

" D. C. Bowne, who personally appeared before me, J. S. Stewart, county clerk, deposes and says that the facts contained in the foregoing schedule, wherein his liabilities and assets are set forth, are true and correct, to the best of his knowledge and belief.

" In witness whereof, I have hereunto set my hand and seal, this third day of August, 1889.

                                    " J. S. STEWART,
[SEAL.]                                    County Clerk.
                    " By Thomas Thompson, Deputy."

McCarthy (appellee) was sheriff of Pueblo. county.   On August 3, 1889, The Central National Bank of Pueblo sued out a writ of attachment against assignor Bowne.   It was, by the sheriff, levied upon the goods mentioned in the complaint as the property of Bowne.   On the same day F. L. Strang & Co. sued out an attachment against the same.

party, which was, by the sheriff, levied upon the same goods. On the same date the Pueblo Hardware Co. sued out an attachment, which was levied upon the same goods; also, on the same date, James G. Johnson & Co. sued out an attachment which was levied upon the same goods. On the 5th day of August, the suits of Central National Bank and Strang & Co. against Bowne were settled, and attachments released, but the goods were still held under the attachments of the other parties named. From the 5th to the 14th of the same month Newall Bros. Manufacturing Co., Eberhard Faber, The Japanese Fan Co., Koch Sons & Co. and Edward Scheitlin & Co. commenced suits by attachment in the county court of Pueblo county, which were levied upon the goods which were attempted to be conveyed by the assignment. On August 7th, appellant, as assignee of Bowne, filed his complaint in the usual form, alleging that by virtue of the assignment he was entitled to the possession of the following described goods and chattels, to wit: " A certain stock of leather and millinery goods, now situate in the leather and millinery department of a certain building, known as The Bon Marche building, situate on the corner of Seventh street and Santa Fe avenue, in the city of Pueblo, in said county and state, the same being part of a general stock of merchandise formerly owned and possessed by one D. C. Bowne, and being all the goods situate in the said leather and millinery department of the said Bon Marche building."

And that the same were withheld from him by McCarthy. Defendant, McCarthy, answered generally and specifically, first, denying all the material allegations in the complaint; second, that the pretended deed of assignment was made for the purpose of hindering, delaying and defrauding his creditors from collecting their respective claims, and that said plaintiff had full notice of such intent on the part of Bowne: that the pretended deed of assignment was void on its face— alleging his official position of sheriff, and that as such he levied the attachments above mentioned, and that he held the goods, as sheriff, by virtue of such attachments, and not

otherwise. A replication was filed by plaintiff as to the matters contained in the second defense. On Dec. 7, 1889, the case came on for trial before the court without a jury. Upon the trial, the supposed deed of assignment from Bowne to the plaintiff was offered in evidence, objected to by the defendant for the following reasons :

" First. Said instrument does not purport or pretend to convey all of the property of the assignee as required by the statute, and does not purport to be a general assignment.

" Second. Said instrument does not purport or pretend to provide for the distribution of his property, or the proceeds thereof among all the assignor's creditors, and the said pretended deed is not by its terms made for the benefit of all his creditors in proportion to the amount of their respective claims.

" Third. The pretended deed of assignment has no schedule attached of the assignor's property, as required by the statute of Colorado, and does not in its terms state that all of the assignor's property is conveyed, or pretended to be conveyed by the said assignment.

" Fourth. There is no list of the creditors attached to the instrument such as is required by statute.

" Fifth. The affidavit to the list of creditors is not in accordance with the laws of 1885."

The court sustained the objections and refused to admit the deed in evidence. W. W. Palmer, the plaintiff, was called in his own behalf, and the following offers of proof were made :—

" We offer to prove by this witness who is the assignee in this case, that D. C. Bowne was doing business in the city of Pueblo, and only had one place of business in the city, and that all his property consisted of this stock of goods. We further desire and offer to prove by this witness that on the third day of August he took possession of this stock of goods, that the possession was turned over to him by D. C. Bowne, and that immediately thereafter this plaintiff caused

a true and perfect inventory of said goods and chattels to be made and filed in this court.

"We further offer to prove by this witness that on the twelfth day of August he caused the inventory of said goods and chattels to be filed with the clerk of the district court of this county, and that the cost value of said goods laid down in the city of Pueblo was $31,071.18.

"We further offer to prove by this witness that on the twelfth day of August, 1889, this witness executed a bond in the sum of sixty-three thousand dollars, which bond is fully set forth in folios 78 and 79.

"August 12th, 1889, bond filed and approved.

"We further offer to prove by this witness that the goods and chattels in controversy in this case are part of the said goods and chattels described in said inventory, and which were taken possession of by plaintiff on the 3d day of August; and that the levy of each of the attachments was made after the same came into the hands and possession of plaintiff.

"We further offer to prove by this witness that all the acts of possession performed by plaintiff in regard to said stock of goods were done in pursuance of the deed of assignment which was offered in evidence." To which defendants objected, and the objections were sustained by the court. The court awarded judgment against the plaintiff in the sum of $942.03, damages and costs, from which judgment the appeal was prosecuted to this court.

Mr. M. B. GERRY and Mr. M. G. SAUNDERS, for appellant.

Mr. JOHN W. SLEEPER, for appellee.

REED, J., after stating the facts, delivered the opinion of the court.

An assignment, under our statute, cited above, to be valid must be a general assignment of all the property, real and

personal, of the assignor, and the deed, upon its face, must show that it embraces all the property of the assignor. The language of the statute is : " *may make a general assignment of all his property for the benefit of his creditors by deed*," etc.

In *Barnitz v. Rice*, 14 Md. 24, it is said : " We do not wish to be understood as saying any particular words are necessary to be used, but only that such must be employed as will convey all the debtor's property. All that is required is that the words should comprehend all, and thereby negative every presumption that there is other property." See *McClurg v. Lecky*, 3 Pen. & W. (Pa.) 83 ; *Grover v. Wakeman*, 11 Wend. (N. Y.) 187 ; *Gadsden v. Carson*, 2 Rich. Eq. (S. C.) 252 ; *Gibson v. Finley*, 4 Md. Ch. Dec. 75 ; *Ins. Co. v. Wallis et al.*, 23 Md. 182.

It is a well settled rule of construction, that when the deed in general terms, purports to convey all the property, and afterwards enumerates and designates the property assigned, such special designation controls the general words, makes the assignment special instead of general, and renders the deed inoperative and void. Burrill on Assign. 192, 195, 485 ; *Barnitz v. Rice, supra ; Bock v. Perkins*, 28 Fed. Rep. 123 ; *U. S. v. Howland*, 4 Wheat. 103.

There are in the deed of conveyance no words evidencing either the desire or intention to convey all the property of the assignor ; the only conclusion that can be legally deduced from the language used is that the assignment was to be special, of the property enumerated, viz., " all of the accounts, debts, dues, notes, bills, bonds and demands, goods, wares and merchandise, *named and specified in a schedule and inventory to be hereinafter filed*." The language used instead of negativing every presumption that there was other property, not conveyed, would clearly indicate that the property conveyed was specially selected and set apart from the body of the estate. It follows from the authorities cited that in this respect the deed was void and invalid.

There was also an absolute failure to comply with sec. 170. No inventory was annexed to such deed of assignment. All

that was said is, "amount of stock on hand about $35,000."
What kind of stock? The word stock in no way connects
the schedule with the property assigned; there was no as-
signment of "stock" made, nor was there any inventory
made of any property designated and attempted to be con-
veyed by the deed. It may, possibly, by the words "goods,
wares and merchandise," used, be inferred that the assignor
was engaged in a mercantile business, but there is no such
assertion. The only statement is, "that he was residing and
doing business in the city and county of Pueblo." It would
be equally true, and the word "stock," used in the sup-
posed inventory, equally applicable, if he was engaged in
raising sheep, cattle or horses.

By the same section (170), the assignor is required to give
a list of his creditors, their names, residences, if known, and
the amounts of their respective demands. Only a partial
list of creditors was given—the records of the court show a
half dozen or more firms and individuals, whose names did
not appear in the list, instituted proceedings by attachment
before the list was made out and filed. Clearly, no honest
attempt, even, was made to comply with the statute. The
assignor is also required to verify the inventory and list of
creditors, under oath. The proceedings were, in this respect,
fatally defective. The statute, as in all cases where such
language is used, requires an affidavit subscribed by the party,
and the certificate of an officer that an oath was administered
—neither appears.

The deputy clerk certifies he appeared, not before him,
but before "J. S. Stewart, County Clerk," etc. These stat-
utory provisions cannot be dispensed with—a material fail-
ure to comply with them or a serious departure vitiates the
whole proceeding. The inventory required is for the pur-
pose of identification. The deed may in general terms con-
vey all the property of the grantor in trust for all creditors.
The inventory required by law, when attached to the deed
of assignment, becomes a part of it—designates and defines
the conveyance by showing the amount, quantity and spe-

cific character of each and every part of the estate conveyed; without it, as in this case, the words of conveyance being so general, nothing passes, for there can be no identification; hence, the wisdom and necessity of a sworn inventory as required by statute, and of a strict compliance with it. The necessity of a full and complete inventory is emphasized and illustrated in this case. The goods to be taken by the writ were described in the complaint as " a certain stock of leather and millinery goods now situate in the leather and millinery department of a certain building, known as the Bon Marche building," etc. No such goods were conveyed, nor embraced in the inventory; there was nothing to connect them in any way with the property conveyed. That could only be done by parol evidence, which was inadmissible, and properly excluded by the court. As can be seen at once, the effect, if admitted, would be to make, by parol, a deed required by statute to be in writing executed by the grantor, verified by his oath and of record. It would not be to explain and apply the conveyance, but to supply the subject-matter, the property conveyed, required by statute to be embraced in it.

The judgment of the district court will be affirmed.

*Affirmed.*